1  Mark A. Hutchison (4639)
   Shannon R. Wilson (9933)
2  Ramez A. Ghally (15225)
   HUTCHISON & STEFFEN, PLLC
3  Peccole Professional Park
   10080 West Alta Drive, Suite 200
4  Las Vegas, NV 89145
   Tel: (702) 385-2500
5  Fax: (702) 385-2086
   mhutchison@hutchlegal.com
6  swilson@hutchlegal.com
   rghally@hutchlegal.com
7
   Paul D. Clement (Virginia Bar No. 37195)
8  (*Admitted Pro Hac Vice*)
   CLEMENT & MURPHY, PLLC
9  706 Duke Street
   Alexandria, VA 22314
10 Tel.: (202) 742-8900
   paul.clement@clementmurphy.com
11 *Attorneys for Plaintiffs*

Sarah E. Harrington (*Pro Hac Vice
Forthcoming*)
David M. Zionts (*Pro Hac Vice
Forthcoming*)
Alexander A. Berengaut (*Pro Hac Vice
Forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
sharrington@cov.com
dzionts@cov.com
aberengaut@cov.com
(202) 662-6000
*Attorneys for Plaintiff Airbnb, Inc.*

12              **UNITED STATES DISTRICT COURT**
                **DISTRICT OF NEVADA**
13

14 GREATER LAS VEGAS SHORT-TERM          Case No.: 2:25-cv-01173-MMD-BNW
   RENTAL ASSOCIATION; JACQUELINE
15 FLORES; LOUIS KOORNDYK;
   ESTRELITA KOORNDYK; HAAN'S
16 PROPERTIES LLC; LK'S PROPERTIES       **PLAINTIFFS' EMERGENCY MOTION**
   LLC; THOMAS M. MCKANNON, DEBRA        **FOR A PRELIMINARY INJUNCTION**
17 HANSEN; JOHN HANSEN, TROY             **AND INCORPORATED**
   UEHLING; PHILIP JOHNSON; SAMUEL       **MEMORANDUM OF LAW**
18 HANKINS; LISA HANKINS; 4502 PALM
   MESA LLC; and AIRBNB, INC.;           ORAL ARGUMENT REQUESTED IN
19                                       ACCORDANCE WITH LR 78-1
                Plaintiffs,
20
   v.
21
   CLARK COUNTY, a political subdivision of
22 the State of Nevada, and AARON D. FORD,
   in his official capacity as Attorney General
23 for the State of Nevada,

24              Defendants.

25

# TABLE OF CONTENTS

1.    INTRODUCTION ................................................................................................ 1

2.    BACKGROUND ................................................................................................. 3

A.   Nevada AB 363 Requires Clark County to Allow Short-Term Rentals ............................ 3

B.   Clark County Adopts an Ordinance that Conflicts With AB 363 ................................... 4

C.   Clark County's Unlawful Throttling of Short-Term Rental Licenses ............................. 4

D.   Clark County's Imminent, Unlawful Enforcement of the Ordinance ............................. 5

3.    ARGUMENT ....................................................................................................... 7

A.   The Ordinance, on its Face and as Applied, Is Preempted by Nevada AB 363 ................. 7

(i)   Under AB 363, Counties Must Give Individual Homeowners a Meaningful Opportunity to Obtain a License. ............................................................... 9

(ii)  The Ordinance's Provisions Creating Additional Categories of Ineligible Properties Are Invalid. ...................................................................................... 11

(iii) The County's Failure To Operate A Functional Licensing Regime, Together With Its Demand That Airbnb Police Unlicensed Listings, Is Unlawful. ................................ 13

B.   The County's Enforcement Of The Ordinance Violates Due Process. ............................. 15

C.   The Ordinance Is Preempted By CDA Section 230. ................................................. 17

D.   Absent Preliminary Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm. .............. 21

E.   The Balance of the Equities and Public Interest Support Preliminary Relief. ................... 23

4.    CONCLUSION ................................................................................................. 24

i

Plaintiffs respectfully move for a preliminary injunction against enforcement of Chapters 7.100 and 7.110 of the Clark County Code (the "Ordinance"). This motion for emergency relief and request for an emergency hearing are brought pursuant to FRCP 65 and Local Rule 7-4 to enjoin the County's announced enforcement of the Ordinance beginning on September 1, 2025.[1]

## 1. INTRODUCTION

The right of Americans to open their homes to guests has always been woven into the Nation's fabric. Homeowners have long exercised their fundamental property rights by leasing all or part of their home to others, for short and long periods of time. The right to lease fulfills the promise of foundational constitutional liberties, and for many the income it generates helps make homeownership possible in the first place.

Clark County seeks to deprive homeowners of these rights. While purporting to lift an unconstitutional ban on short-term rentals—as the Nevada Legislature ordered it to do—Clark County did the opposite. The County adopted a *faux* licensing regime, sharply restricting eligibility and giving itself broad discretion to deny licenses even when applicants are eligible to lease their homes per Nevada statute. Clark County Code §§ 7.100.080, 7.100.100; NRS 244.35351 *et seq*. And as bad as it is on paper, in practice it is worse. Under its Ordinance, the County opened its license application portal just *once*, and has not accepted any new applications for the past two years. As for the few applications it deigned to accept, the County is processing them at a snail's pace, leaving most applicants in limbo. In a jurisdiction with approximately 1 million residents and nearly 300,000 homes, the County has seen fit to award just *174* licenses.

Yet at the same time as it has failed to stand up a meaningful licensing scheme, Clark County is also going on the offensive. The County has levied draconian fines against homeowners for renting

---

[1] The parties' meet and confer attempts were unsuccessful. *See* Ex. A (LR 7-4 Declaration). Plaintiffs respectfully request a hearing in advance of September 1 and an expedited briefing schedule with Defendants' Opposition due August 18 and Plaintiffs' Reply due August 21.

out their properties, in some cases demanding full payment by mid-August 2025. Meanwhile, the County is demanding that starting on September 1, hosting platforms like Airbnb must deactivate listings without a license *en masse*. Airbnb has raised its concerns with the County, but has been stonewalled. The upshot: If homeowners cannot do the impossible—obtain a license from a local government that stalwartly refuses to give out licenses—the County will impose financial ruin on them and conscript platforms to help it take away their rights.

Preliminary relief is urgently needed to preserve the status quo in the face of the County's extreme measures to upend it. The legal defects in the County's actions are legion, but this motion highlights three, any one of which suffices to establish Plaintiffs' likelihood of success.

*First*, the County's Ordinance and actions violate Nevada AB 363 codified at NRS 244.35351 *et. seq.* The Legislature enacted AB 363 to, *inter alia*, "requir[e] . . . Clark County to repeal a longstanding ban on short-term rentals in its unincorporated areas and to implement regulations *allowing* for short-term rentals to operate." *Greater Las Vegas Short Term Rental Ass'n v. Clark Cnty.* ("*GLVSTRA*"), 555 P.3d 265, 266 (Nev. 2024) (emphasis added). And AB 363 expressly directs that Clark County "shall not enact or enforce a complete prohibition on the [short-term] rental of a residential unit or a room within a residential unit." NRS § 244.353545.4. But instead of "allowing for short-term rentals to operate," *GLVSTRA*, 555 P.3d at 266, Clark County has created a dysfunctional regime that makes licenses, and thus short-term rentals, unattainable for virtually everyone.

*Second*, as a result of the County's utter failure to implement a functional licensing process, its interference with Plaintiffs' property and liberty interests violates due process.

*Third*, federal law forbids the County's regime. As the Ninth Circuit has explained, Section 230 of the Communications Decency Act ("Section 230") preempts laws that impose duties on website operators to monitor third-party content. The Ordinance demands that Airbnb do just that.

/ / /

2

The harm to Plaintiffs is imminent and irreparable. Hosts are deprived of fundamental property and other constitutionally protected rights and will lose vital sources of income, potentially even their homes. And the equities are lopsided. Allowing enforcement—and the violation of Plaintiffs' constitutional rights—to proceed before Clark County has established a functioning license system puts the cart before the horse. Placing the County's regime on hold while this Court fully evaluates the Ordinance's serious legal deficiencies (during which time the County can finally develop a functional licensing system) is plainly the preferable course. Plaintiffs respectfully request relief in advance of September 1.

## 2. BACKGROUND

### A. Nevada AB 363 Requires Clark County to Allow Short-Term Rentals

Nevada AB 363 purports to empower Clark County to impose severe—indeed, unconstitutional—burdens on homeowners' ability to rent their homes on a short-term basis. But it also sets clear limits on how far Clark County can go to limit this activity. Clark County must "adopt and enforce an ordinance *regulating*"—not banning—short-term rentals. NRS § 244.353545.1 (emphasis added). In the words of the Nevada Supreme Court, the County must "repeal a longstanding ban on short-term rentals in its unincorporated areas" and "implement regulations *allowing* for short-term rentals to operate." *See GLVSTRA*, 555 P.3d at 266 (emphasis added). And the County "shall not enact or enforce a complete prohibition on the [short-term] rental of a residential unit or a room within a residential unit." NRS § 244.353545.4. AB 363 favors regulation over prohibition, authorizing Clark County to adopt additional regulatory requirements on licensed properties, while directing that they not run afoul of NRS § 244.353545.4—the provision preventing a "complete prohibition" on the short-term rental of any "residential unit" unless otherwise prohibited by state law. *Id.* § 244.35358.1 (permitting restrictions "[e]xcept as otherwise provided in [NRS § 244.353545.4]"). The Legislature's direction—as interpreted by Nevada's highest court—is clear: the County must "implement regulations allowing for short-term rentals to operate." *GLVSTRA*, 555

P.3d at 266.

### B. Clark County Adopts an Ordinance that Conflicts With AB 363

On June 21, 2022, Clark County adopted the Ordinance, codified in Chapters 7.100 and 7.110 of the County Code. It imposes a byzantine series of regulations on short-term rentals that go well beyond what AB 363 allows, banning short-term rentals outright in most of the County, and denying the vast majority of homeowners the opportunity to participate in short-term renting. To operate a short-term rental in Clark County, a property owner must obtain (and renew annually) a short-term rental license. Clark County Code §§ 7.100.030; 7.100.060; 7.100.130. But many classes of property owners are rendered ineligible—before they apply—for a license for arbitrary reasons, including where they live or the type of home they own. For example, homeowners in certain townships or "[w]ithin one thousand feet of any [other] short-term rental unit" are barred from obtaining a license. *See id.* § 7.100.080(c), (f)(2). Notwithstanding the Legislature's directive, only 1% of the County's housing units may be operated as a short-term rental at any time. *Id.* § 7.100.050. Even when the number of licensed units falls under that unlawful cap, the County can unilaterally declare no licenses "available." *Id.* § 7.100.100(a). And if applicants are allowed to seek a license at all, they must submit a raft of personal information and fulfill cumbersome requirements. *See id.* § 7.100.090.

The Ordinance also severely burdens hosting platforms like Airbnb. "Before listing or advertising a short term rental unit," platforms must "verify that the short term rental unit has been issued a valid unexpired short-term rental license" and then "[d]eactivate" all listings which lack a valid state or county business license number, or which the [County Department of Business License] otherwise requests [the platform] remove." *Id.* § 7.110.080(a), (c).

### C. Clark County's Unlawful Throttling of Short-Term Rental Licenses

Clark County has exacerbated the Ordinance's burdens by failing to properly administer its own rules. The County accepted applications for short-term rental licenses from September 2022 to August 2023. *See* Ex. C, Declaration of Jacqueline Flores ("Flores Decl."), Ex. 1, Ex. 2. Homeowners

4

submitted more than 1,300 applications. *See id.* Ex. 3, Ex. 4. The County's initial review, which checked for so-called "eligible" applications, cut the number closer to 700. *See id.* Ex. 3. The County then did not issue its first license until August 2024. *See id.* Ex. 5. By March 2025, it had issued only *174* licenses—sitting on a backlog of 515 pending applications. *See id.* The County has no plan to catch up—it is processing roughly six licenses per week, so it will take a year and a half to make it through the backlog. *Id.* Even if there were a functioning system for accepting new applications, the County would never process all of them.

But despite what the Ordinance says, there is no functional way for new applicants to seek a license. The Ordinance, by its terms, requires the County to "commence an application period for the issuance of short-term rental licenses at least one time annually unless the department determines that no licenses are available for issuance." Clark County Code § 7.100.100(a). But the County's application portal has been closed since August 2023, *see* Wilson Decl., Ex. 6, without any public determination that licenses are unavailable. As a result, homeowners who did not apply by August 2023, including those who have moved to or bought homes in the County since then, are indefinitely locked out of exercising their short-term rental rights altogether.

### D.    Clark County's Imminent, Unlawful Enforcement of the Ordinance

Given the County's throttling of its licensing pipeline, it had wisely abstained for almost three years from enforcing requirements that hosting platforms remove unlicensed listings. Ex. B, Declaration of David Countryman ("Countryman Decl.") Ex. 1. That is all about to change. The Ordinance requires "accommodations facilitators" like Airbnb and other internet platforms to "verify" whether short-term rental listings have "a valid unexpired short-term rental license" and to "[d]eactivate all listings" that lack a license or that the County asks the platform to remove. Clark County Code § 7.110.080(a), (c). Those obligations, like the County's licensing regime, long lay inoperative. But the County informed Airbnb that it will begin enforcement on September 1, 2025. Countryman Decl. Ex. 1.

5

Such active enforcement would have enormous consequences for hosts and platforms alike. In part, that is because the County is demanding that platforms help it enforce a licensing regime while at the same time declining to issue licenses. It is also because platforms lack critical information they would need to comply with the Ordinance's verification requirements. For example, both AB 363 and the Ordinance exempt certain short-term rentals from licensing requirements. *See* NRS § 244.35351; Clark County Code § 7.100.040. Yet only the County possesses the information needed to confirm whether a particular unit is exempt. Countryman Decl. ¶¶ 8-9. Without that information, platforms cannot sort the short-term rentals that can be listed from those that cannot. *Id.* Exemptions aside, Airbnb cannot reliably confirm before September 1, 2025 the license status of all hosts who are subject to the regulations. *Id.* ¶ 10.

Airbnb encouraged the County to implement a workable system with a reliable way to identify exempt properties and allow host registrations. In June 2025, Airbnb met with County representatives, to no avail. *Id.* ¶ 5. On July 11, Airbnb wrote to the County Manager to explain why the Ordinance is unlawful, discuss potential solutions, and ask that enforcement be delayed in the meantime. *Id.* Ex. 2. Airbnb asked the County to agree to the recommended measures by July 18, 2025, or at least agree to a meeting by that date to discuss the company's concerns. *Id.* On August 5, the County finally responded "declin[ing] your request for a meeting." *Id.* Ex. 3.

At the same time as it has failed to properly administer a short-term rental regime, the County has issued hefty—even excessive—fines, recorded those fines as special assessment tax liens against various properties (clouding title), and has sent notices to owners or their lenders that those assessments are due later this month. Lenders have and will pay those liens to maintain their priority, passing the bill to the homeowners through their escrow or mortgage accounts. If tax liens are not paid, ultimately, the County can seize their property. In sum, the County has doubled down on its disregard for property rights: refusing to issue licenses so that homeowners can engage in short-term rentals, and penalizing those who do so.

**3.  ARGUMENT**

A preliminary injunction is warranted where a plaintiff is likely to succeed on the merits and will suffer irreparable harm absent relief, and where the balance of equities and the public interest support an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each factor strongly supports relief here. The Ordinance likely violates AB 363 because: (1) it enacts and is being operated to prohibit short-term rentals expressly allowed by state law, (2) its dysfunctional licensing system likely violates due process, and (3) it likely violates Section 230 by imposing extensive obligations on Airbnb to monitor third-party content. Plaintiffs' loss of constitutional freedoms is irreparable harm per se. *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (showing constitutional violation and injury usually demonstrates irreparable harm no matter how brief the violation). Hosts will also suffer concrete irreparable harm from lost rental income—costing some their homes. And Airbnb will be forced to choose between facing enforcement of an unlawful Ordinance or participating in its administration to the detriment of the business and hosts alike. The equities and public interest weigh decisively in Plaintiffs' favor: the County has no legitimate interest in enforcing the "null and void," preempted, unconstitutional Ordinance. The Court should "preserve the status quo until" the Court can adjudicate Plaintiffs' claims. *Lackey v. Stinnie*, 145 S. Ct. 659, 662 (2025).

**I.    The Ordinance, on its Face and as Applied, Is Preempted by Nevada AB 363.**

A county ordinance is "subordinate to" state statutes, *Falcke v. Douglas Cnty.*, 116 Nev. 583, 588 (2000), and "is invalid if it conflicts with state law," *Syngenta Seeds, Inc. v. Cnty. of Kauai*, 842 F.3d 669, 674 (9th Cir. 2016). "In no event may a county enforce regulations which are in conflict with the clear mandate of the legislature." *Lamb v. Mirin*, 90 Nev. 329, 333 (1974).

Here, as the Nevada Supreme Court observed in the first sentence of a recent decision, the Legislature enacted AB 363 to "*allow[] for short-term rentals to operate.*" *GLVSTRA*, 555 P.3d at 266 (emphasis added). The statute accordingly directs that Clark County "shall not enact or enforce a complete prohibition on the [short-term] rental of a residential unit." NRS § 244.353545.4. But the

Ordinance, together with Clark County's maladministration of its own licensing regime and threatened enforcement of a sweeping takedown mandate on platforms, all but prohibits short-term rentals of the residential units of county homeowners.

On its face, the Ordinance admits the County's hostility to the Legislature's objectives. The Ordinance begins by "find[ing]" and "declar[ing]" that "[t]he primary function of residential development in Clark County is to provide permanent, affordable housing for the residents of the county." § 7.100.010(a). Plaintiffs agree with promoting affordable housing, which is consistent with respecting short-term rental rights. But the Ordinance leaps (without evidentiary support) to "find" that *any* "commercial use of residential development for transient lodging is inconsistent with this purpose." *Id.* § 7.100.010(a).[2] Against the backdrop of that overt hostility, the County has declared the vast majority of residential units ineligible for a short-term rental license, and then has stonewalled licenses for everyone else, with only *de minimis* exceptions.

The Ordinance's fatal deficiencies are apparent on its face. They are reinforced by the County's patent failure to operate a functional licensing process. And all of this is compounded by the County's enforcement threat demanding that platforms help it take away the rights of property owners who cannot do the impossible—obtain a license the County refuses to make available. Courts regularly enforce preemption principles, including in the short-term rental context, against local regulations like this. *See, e.g.*, *Hawaii Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, 709 F. Supp. 3d 1141, 1147, 1154 (D. Haw. 2023) (local zoning ordinance prohibiting certain short-term rentals preempted by state law requiring grandfather clauses); *Ogden Env't Servs. v. City of San Diego*, 687 F. Supp. 1436, 1444, 1448 (S.D. Cal. 1988) (local government's denial of permit for waste disposal preempted by federal scheme authorizing such permits); *see also Falcke*, 116 Nev. at 589

---

[2] To be clear, Plaintiffs dispute the premise that short-term rentals, which involve guests *residing* at the property, are "commercial" uses of property—just like long-term rentals, they are residential.

(local ordinance requiring supermajority vote preempted by State statute requiring majority vote). Plaintiffs will succeed here as well.

### A.    Under AB 363, Counties Must Give Individual Homeowners a Meaningful Opportunity to Obtain a License.

AB 363 directs counties to "adopt and enforce an ordinance *regulating*"—*i.e.*, not banning—short-term rentals. NRS § 244.353545.1 (emphasis added). It is well-established that the "power to regulate is not a power to destroy." *Stone v. Farmers' Loan & Trust Co.*, 116 U.S. 307, 331 (1886). Had the Nevada Legislature stopped at subsection 1, that alone would have required the County to establish a functional licensing regime that in practice "allow[s] for short-term rentals to operate." *GLVSTRA*, 555 P.3d at 266.

But in subsection 4 it went even further, providing:

> A board of county commissioners *shall not enact or enforce a complete prohibition* on the rental of *a residential unit* or a room within a residential unit for the purposes of transient lodging. Any ordinance or regulation which is inconsistent with this subsection is null and void and the board of county commissioners shall repeal any such ordinance or regulation.

NRS § 244.353545.4 (emphasis added). Critically, the Legislature disallowed complete prohibitions not just at the level of the entire county, but at the level of each *individual* residential unit. By using the phrase "*a residential unit or a room within a residential unit,*" *id.* § 244.353545.4 (emphasis added), the Legislature applied this protection broadly to cover any residential unit or room within a residential unit that is eligible under the state law to be licensed as a short-term rental. The word "'a'" is most "often used in the sense of 'any.'" *Citizens for Resp. & Ethics in Washington v. FEC*, 971 F.3d 340, 355–56 (D.C. Cir. 2020) (quoting A, *Black's Law Dictionary* (5th ed. 1979)). Read most naturally, subsection 4 thus disallows (subject to limited exceptions) a complete prohibition on the short-term rental of *any individual* residential unit.

Indeed, if the Legislature had meant to address only county-wide bans, it would not have needed subsection 4. As noted above, AB 363 separately requires counties to "regulat[e]" short-term

rentals by establishing a licensing regime, which already eliminated the option of a total ban on all short-term rentals. *See* NRS § 244.353545.1. Because AB 363 was enacted to authorize short-term rentals, as the County acknowledges, Clark County Code § 7.100.010(d), it would preempt any ordinance that effectively prohibits short-term rentals, even without explicit statutory language to that effect. But the Nevada Legislature went even further in subsection 4, barring counties from "enact[ing] or enforc[ing] a complete prohibition on the rental of a residential unit" and declaring that any ordinance to that effect would be "null and void." NRS § 244.353545.4. By going further to prohibit a "complete prohibition" on any *individual* "rental of a residential unit or *a* room," *id.* § 244.353545.4 does real work—ensuring that individuals eligible under state law all have a meaningful opportunity to apply for and obtain a short-term rental license. Any narrower interpretation would violate the canon against surplusage, under which "every word and every provision in a statute is to be given effect." *E.g.*, *Berberich v. Bank of Am., N.A.*, 136 Nev. 93, 95 (2020) (cleaned up).

AB 363's structure further confirms that counties cannot "enact" or "enforce" eligibility requirements on individual units separate from what AB 363 expressly identifies. AB 363 specifies particular categories of residential units that may not be licensed for use as short-term rentals—such as residential units "located in an apartment building," NRS § 244.353545.2(d). By including a detailed, enumerated list of eligibility requirements—and excluding others—the Nevada Legislature signaled that counties were not to layer further eligibility restrictions on top. *See, e.g.*, *Harvey v. State*, 136 Nev. 539, 543 (2020) (applying *expressio unius* canon, under which "the expression of one thing is the exclusion of another").

In other words, the Legislature required Clark County to guarantee that—absent a more specific restriction set out in the text of AB 363—eligible homeowners must have a meaningful opportunity to apply for and obtain a short-term rental license. *See also* NRS § 244.35356.1 (establishing written application requirement for any "person who wishes to offer for rent a residential

unit or a room within a residential unit" for purposes of short-term rental). Clark County cannot point to the fact that a few years ago it accepted license applications during a brief window and since then has granted a *de minimis* number of licenses, and pretend that this is all the Legislature required. Virtually every Clark County homeowner is still subject to a "complete prohibition" on short-term renting for his or her "residential unit." NRS § 244.353545.4. Banning short-term rentals without a license, and then failing to create a functional licensing system, runs afoul of AB 363's plain text and defeats the Legislature's well-recognized purpose.

### B. The Ordinance's Provisions Creating Additional Categories of Ineligible Properties Are Invalid.

The Ordinance purports to adopt a licensing scheme in compliance with AB 363. *See* Clark County Code § 7.100.010(d). But it attacks short-term rentals in myriad ways that go beyond what state law allows. For example, the Ordinance caps short-term rental licenses at "one percent" of total housing units. Clark County Code § 7.100.050 (emphasis added). It then sets out a lengthy list of "[i]neligible residential units," a category that includes—along with roughly a dozen other ineligible groups—any residential unit located anywhere in one of five different townships, *id.* § 7.100.080(c), and any unit having "multiple substantiated violations of Clark County Code within the preceding thirty-six months that were not subsequently remediated to the satisfaction of code enforcement," *id.* § 7.100.080(h). Any license application submitted for any of these ineligible units will thus be summarily denied. *See id.* § 7.100.110(a)(5) & (6).

Even the rare Clark County homeowner who is *eligible* for a license can be arbitrarily prevented from *obtaining* one. The Ordinance provides for an annual application period, "*unless* the department determines that no licenses are available for issuance." *Id.* § 7.100.100(a) (emphasis added). That limitless exception apparently gives the County unfettered discretion to dispense with an application period. An applicant that manages to apply during an open window must submit detailed personal information. *See id.* § 7.100.090. "The application must be submitted through the

department's licensing system," *but* "[t]he department will not be responsible for the applicant's failure to apply in a timely manner for any reason, including technical issues" related to the County's own system. *Id.* § 7.100.100(d). That is, the application can be rejected for reasons that are the County's fault. By systematically foreclosing any genuine opportunity to obtain a license, the Ordinance thus flatly violates AB 363.

The County cannot justify these conflicts with a strained reading of AB 363's provision allowing Clark County to impose "additional requirements . . . related to the rental of a residential unit or a room within a residential unit for purposes of transient lodging that are more restrictive than" those set out in AB 363. Nev. Rev. Stat § 244.35358.1. Critically, the County may impose such requirements "*[e]xcept* as otherwise provided in subsection 4." *Id.* (emphasis added). Thus, while Clark County may impose additional health and safety requirements "related to" a short-term "rental" by an existing licensee, the County may *not* add new categorical barriers to obtaining a license—and it may not take away all meaningful opportunities for a residential unit that would be eligible for a license under the state law to actually obtain one. A contrary interpretation would impermissibly "cause [AB 363] to be at war with itself." *United States v. Am. Tobacco Co.*, 221 U.S. 106, 180 (1911). Accordingly, while Clark County *must* adopt the restrictions set out in NRS § 244.353545.2, and *may* impose additional requirements on license-holders, *id.* § 244.35358, such as common health and safety regulations, it *may not* prohibit additional property owners from obtaining a license to host outright, *id.* § 244.353545.4.

Together, the Ordinance's provisions establish a Kafkaesque regime: while nominally purporting to allow short-term rentals, the County arbitrarily bars most property owners from applying for a license; it then reserves to itself discretion to refuse to accept applications from eligible property owners; and then it declares its authority to reject applications that fully comply with all of the County's burdensome application requirements for reasons that are the County's own fault. The County's Ordinance on its face thus constitutes an effective prohibition on the use of residential units

for transient purposes, utterly at odds with AB 363's purpose of "*allowing* for short-term rentals to operate." *GLVSTRA*, 555 P.3d at 266 (emphasis added).

### C.    The County's Failure To Operate A Functional Licensing Regime, Together With Its Demand That Airbnb Police Unlicensed Listings, Is Unlawful.

As unlawful as the Ordinance is on its face, the County's implementation and announced "enforce[ment]" as of September 1, 2025 makes the situation even worse. Even as to property owners whom the County deems eligible to apply for a short-term rental license, it has in practice denied them a meaningful opportunity to obtain one—conflicting with AB 363's "clear mandate," *Lamb*, 90 Nev. at 333.   AB 363 requires Clark County to do more than create a licensing process on paper.  It unambiguously prohibits the County from "*enforc[ing]* a complete prohibition on the [short-term] rental of a residential unit."  NRS § 244.353545.4 (emphasis added). Beyond the Ordinance's facial flaws, the County is violating AB 363 by enforcing a complete prohibition on the short-term rental of virtually all residential units in the County.

After adopting the Ordinance in 2022, the County opened a window to accept applications for licenses only *once*—from September 2022 to August 2023. *See* Flores Decl., Ex. 2. Since then, the County has not accepted *any* applications. *See id.* Ex. 6 ("A complete application for a Short-Term Rental Unit License must have been submitted by no later than Aug. 21, 2023."). The County's refusal flies in the face of *its own Ordinance*, which requires it to accept applications "at least one time annually" unless the County "determines that no licenses are available," Clark County Code § 7.100.100(a). The County has not made any public statement "determin[ing]" that no licenses are "available," but it has refused to accept new applications anyway. Nor has it adequately or timely processed the relatively small number of applications it received before closing the application portal. As of March 2025, only 174 licenses had been approved, while 141 had been denied, and 515 remained pending. *See* Flores Decl., Ex. 5. The County does not have a plan to clear this backlog; a licensing official explained to the Board of County Commissioners that it is processing only six

applications per week—*i.e.*, it will take *a year and a half* to process the remaining applications. *Id.*

Despite this backlog and the near-two-year refusal to accept new applications, the County recently announced plans to "enforce" the takedown provision—requiring Airbnb to deactivate hosts whose license status cannot be confirmed. There can be no doubt that refusing to administer a functional licensing regime, while demanding the takedown of unlicensed listings *and* imposing hefty, sometimes excessive, fines on homeowners whose applications it refuses to process, "complete[ly] prohibit[s]" short-term rentals for nearly all county homeowners and residential units in violation of AB 363.

On September 1, Airbnb and other hosting platforms will face penalties if they do not deactivate listings from hosts whose license status cannot be verified. Countryman Decl. Ex. 1; Clark County Code §§ 7.110.080(c), 7.110.120 (c). Airbnb may be forced to deactivate listings that are licensed or exempt but whose status cannot be timely verified. *Id.* ¶ 11. Just as importantly, Airbnb may be forced to deactivate listings from hosts who *would* be licensed if the County had enacted and enforced a *bona fide* licensing scheme with a meaningful opportunity to apply for and obtain a license—and who lack one only because of the County's unlawful ordinance and utter failure to administer a functioning licensing regime. *Id.* In other words, by September 1, the County will have conscripted Airbnb to enforce the unenforceable: a licensing scheme for which licenses are functionally non-existent, and as to which Airbnb has no guidance on how to comply.

Whether analyzed on its face, as implemented, or as it will be enforced, the Ordinance thus conflicts with—and is preempted by—state law. "It would be difficult to find . . . an ordinance in clearer conflict with a state statute." *Lamb*, 90 Nev. at 333. AB 363 directs counties to "*allow[] for* short-term rentals to operate," *GLVSTRA*, 555 P.3d at 266, and bars them from "enact[ing] or enforce[ing] a complete prohibition on the rental of a residential unit or a room within a residential unit," NRS § 244.353545.4. Yet Clark County is overtly hostile to that decision, going so far as to declare all short-term rentals "inconsistent" with county policy. Clark County Code § 7.100.010(a).

The Ordinance, the County's failed licensing regime, and now its enforcement threats, completely prohibit homeowners from applying for and obtaining short-term rental licenses. The Ordinance and the County's associated conduct thus "conflict with the clear mandate of the legislature" by banning "[t]hat which is allowed by the [state's] general laws." *Lamb*, 90 Nev. at 333; *City of Reno v. Reno Police Protective Ass'n*, 98 Nev. 472, 475 (1982) ("[A]llowances provided by the general laws of the state may not … be prohibited by local ordinances").

## II.  The County's Enforcement Of The Ordinance Violates Due Process.

Under the Fourteenth Amendment, a state or local government cannot "deprive any person of life, liberty, or property, without due process of law." The government violates procedural due process if (1) "there exists a liberty or property interest which has been interfered with by the State," and (2) "the procedures attendant upon that deprivation were" not "constitutionally sufficient." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013). There is no question that preventing Hosts from using their properties as short-term rentals deprives them of protected liberty and property interests. Even if the County could lawfully take these steps via a rational, well-functioning licensing scheme, *but see* Am. Compl. Counts II-XX, XXII, it certainly cannot do so under the broken one it has failed to implement: Due process requires homeowners to have "an *opportunity* . . . granted at a meaningful time and in a meaningful manner" to prove their eligibility. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (citation omitted).

***Interference With Protected Interests.*** Procedural due process protects "property interests" "well beyond actual ownership of real estate, chattels, [and] money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972). The Ninth Circuit has held that a "rezoning" that prevented an owner from using his property to "rent[] all terrain vehicles" unconstitutionally "deprived [the owner] of the use of his land without procedural due process." *Harris v. Cnty. of Riverside*, 904 F.2d 497, 498, 504 (9th Cir. 1990). A homeowner's "property rights in the land" likewise "include the right to . . . lease," and "the Constitution protects th[is] essential attribute[] of property." *Terrace v.*

*Thompson*, 263 U.S. 197, 215 (1923); *see also Hamm v. Arrowcreek Homeowners' Ass'n*, 183 P.3d 895, 902 (Nev. 2008) ("[r]eal property implicates a broad range of potential rights" including "the legal right to control and dispose of property"), *abrogated on other grounds by Saticoy Bay, LLC v. Peccole Ranch Cmty. Ass'n*, 495 P.3d 492 (Nev. 2021). The Ordinance interferes with Hosts' right to lease, as it prohibits them from "operating a short-term rental unit without first obtaining" a license. § 7.100.030. And it is compounding that interference with fines and tax liens. Homes, money, and the liberty interest in being free from onerous and unavoidable fines, of course, are properly protected by procedural due process.

**Insufficient Process.** In due course, this case will present the question of whether Clark County can appropriate the right to lease at all, particularly without paying just compensation. But even if it can, the County cannot interfere with this right without at least affording due process. At a bare minimum, agencies and administrators "violate[] the due process clause of the fourteenth amendment" when they interfere with property "without underlying statutory authority." *Vance v. Barrett*, 345 F.3d 1083, 1091 (9th Cir. 2003) (citation omitted). Here, the County purports to rely on the Ordinance's licensing scheme—but, as explained *supra*, the County has utterly failed to implement an *actual functioning licensing regime. Hornsby v. Allen*, 326 F.2d 605, 610 (5th Cir. 1964) (failure to provide any rules guiding review of liquor applications or means to prove eligibility violated due process); *accord Raper v. Lucey*, 488 F.2d 748, 753-54 (1st Cir. 1973) (driver's licenses); *see also Teichmann v. N.Y.C. Emps.' Ret. Sys.*, 2022 WL 4237110, at *5 (S.D.N.Y. Sept. 14, 2022) ("refusal . . . to initiate the established procedures for adjudicating valid applications" violates due process).

Whatever the Ordinance says on its face, in practice the licensing regime is illusory and cannot serve as a basis to interfere with property rights without violating Due Process. One cannot limit the exercise of any important property right to those with a license, and not provide a means to obtain a license. *See Baer v. City of Wauwatosa*, 716 F.2d 1117, 1122 (7th Cir. 1983) ("The state cannot take

away your house . . . [by requiring] a license for [one's] homes and then denying you the license."). Similarly, one cannot impose massive fines for operating without a license that is impossible to apply for and obtain. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 39 n.9 (2022) ("any permitting scheme can be put toward abusive ends" and "exorbitant fees" can "deny ordinary citizens" their constitutional rights).

Due Process principles also do not tolerate "a law with which it is impossible to comply." *United States v. Dexter*, 165 F.3d 1120, 1125 (7th Cir. 1999) (citation omitted); *Campbell v. Bennett*, 212 F. Supp. 2d 1339, 1343 (M.D. Ala. 2002) (due process violation because "any law that requires you to do something by a certain date must give you adequate time to do it"). The Ordinance here purports not to ban short-term rentals but to condition operating short-term rentals on obtaining a license. Due Process does not permit the County to enforce such a conditional ban after making it effectively impossible to obtain the very license on which the County has conditioned the continued enjoyment of property rights. By the same token, a government violates procedural due process when it "provide[s] no procedure" for a deprivation of rights. *Vance*, 345 F.3d at 1090. Here, the only license procedure is one where the County refuses to accept new applications or adjudicate pending ones. And before homeowners receive process of any kind (if they ever do), the County automatically effectuates its interference with their property interests. That is simply a deprivation of property with no procedure at all. *See Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 491 (3d Cir. 1980) ("extraordinary and unreasonable delays violate due process"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988). Clark County's treatment of short-term rentals deprives homeowners of property and liberty interests without due process.

## III.    The Ordinance Is Preempted By CDA Section 230.

Preliminary relief is also warranted for a separate reason: the County imminently threatens to destroy host platforms' immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). Congress enacted Section 230 to shield website operators from liability based on their

role as publishers of third-party content. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1090 (9th Cir. 2021). Section 230 thus declares that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Courts should resolve "close cases" "in favor of immunity." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008) (en banc). And as a protection not just from "ultimate liability" but from "costly and protracted legal battles," Section 230 immunity should be addressed "at the early stages of litigation." *Jackson v. Airbnb, Inc.*, No. 22 Civ. 3084, 2022 WL 16753197, at *1 (C.D. Cal. Nov. 4, 2022) (quoting *Roommates*, 521 F.3d at 1175) (granting preliminary injunction).

Last year, the Ninth Circuit distilled its Section 230 jurisprudence into a straightforward two-part inquiry: (1) is a legal duty imposed on a website by virtue of its "status as a publisher," and (2) "what is this duty requiring the defendant to do?" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). If the duty "obligates the defendant to 'monitor third-party content'—or else face liability—then that [is] barred by § 230(c)(1)." *Id.* (cleaned up); *see Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (duty that "require[s] [operator] to monitor third-party content" "necessarily implicate[s] [that website]'s role as a publisher of third-party content").

Section 230 immunizes Airbnb and other hosting platforms here. On the first question, the County has *expressly* sought to impose duties on platforms due to their status as a publisher. Those duties concern only the platforms' role as a publisher of third-party content (*i.e.*, host listings), and do not arise from any distinct source (*e.g.*, a contract). *See Calise*, 103 F.4th at 740-42.[3]

On the second question, those legal duties obligate hosting platforms to "monitor third-party content" and engage in other core publishing functions like "reviewing, editing, and deciding whether to publish or withdraw from publication third-party content." *See Barnes v. Yahoo!, Inc.*, 570 F.3d

---

[3] The Code's preamble confirms that these duties spring directly from Airbnb's status as a publisher of short-term rental "advertise[ments]." *See* § 7.110.010(d).

1096, 1102 (9th Cir. 2009). That is true in two distinct ways. To start, Airbnb and other platforms

must monitor and approve listings before they are posted on its platform. Prior to allowing any listing,

platforms must "verify that the short-term rental unit has been issued a valid unexpired short-term

rental license." § 7.110.080(a). They must also monitor all listings to ensure that they "include the

short-term rental license number and state business license number and the maximum occupancy

limitations for the residential unit." § 7.110.080(b). And they must "[d]eactivate all listings which

lack a valid state or county business license number, or which the department otherwise requests

[Airbnb] remove." § 7.110.080(c). If platforms like Airbnb do not monitor, identify, and deactivate

all such public short-term rental listings, they can be held liable. In short, the Ordinance "obliges the

defendant to 'monitor third-party-content'—or else face liability." *Calise*, 103 F.4th at 742. It is

therefore "barred." *Id.*

The Ordinance independently offends Section 230 by purporting to require platforms to

monitor and adjudicate existing listings. Clark County requires platforms like Airbnb to refuse to

"accept or facilitate the payment of consideration in exchange for the use or listing of [an unlicensed]

short-term rental." § 7.110.090. This is a broad obligation. *See, e.g.*, *United States v. Foreman*, 926

F.2d 792 (9th Cir. 1990) ("'Facilitate' is defined as 'to make easier or less difficult.'" (quoting

Webster's Third New International Dictionary 812 (1976))). To avoid any role in even "facilitating"

payment associated with unlicensed listings, Airbnb would have to go beyond not "accepting"

payments; it would have to monitor, identify, and deactivate listings, lest it enable (and thus facilitate)

third parties using its platform as an advertising tool from which to move money in connection with

unlicensed short-term rentals. This ban on "facilitation" imposes a legal duty on Airbnb to engage in

constant vigilant monitoring, especially in light of the County's claimed authority to suspend or

revoke any license at any time. It thus collides with Section 230, which prohibits imposition of a

"duty [that] would necessarily require an internet company to monitor third-party content." *Est. of*

*Bride*, 112 F.4th at 1177 n.3.[4]

As many courts have recognized, Section 230 prohibits jurisdictions from imposing duties on website publishers to review, monitor, and deactivate disfavored third-party content. *See Calise*, 103 F.4th at 742; *Barnes*, 570 F.3d at 1102; *Airbnb Boston*, 386 F. Supp. 3d at 123-24 (enjoining law that would have "compel[led] [Airbnb] to monitor and remove third-party content"); *cf. Smith v. Airbnb, Inc.*, 316 Or. App. 378, 381-92 (2021) (Section 230 barred claim against Airbnb for "fail[ing] to 'properly vet potential rental listings'"); *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1104 (C.D. Cal. 2017) (Section 230 barred claim where "it is with Airbnb's publication of this [listing] content that [the plaintiff] takes issue"); *accord Donaher, III v. Vannini*, 2017 WL 4518378, at *2 (Me. Super. Ct. Aug. 18, 2017).

This conclusion is confirmed by *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019). There, while holding that Section 230 immunity did not apply to a challenged local ordinance, the Ninth Circuit articulated when such immunity would properly apply, and its standard fits this case like a glove. Most fundamentally, *Homeaway* confirmed that Section 230 immunity exists where a legal duty "would necessarily require an internet company to monitor third-party content." *Id.* at 682; *accord Doe*, 128 F.4th at 1153. That is precisely what the County Code requires of platforms. Santa Monica's rules in *Homeaway* said nothing about the content of any website listings—they concerned only the processing of tightly defined financial transactions. *See Homeaway*, 918 F.3d at 683 ("[T]he Ordinance does not proscribe, mandate, or even discuss the content of the listings that the Platforms display on their websites. It requires only that transactions involve licensed properties."). Clark County, in contrast, imposes requirements for what listings can be published at all, dictates requirements for text that publishers must require in all listings, and

---

[4] The County's failure to establish a workable system for Airbnb to verify license status, *see supra* section I.C, magnifies the problem. By withholding information about exemptions and denying Airbnb a reliable way to verify license status, the County makes it difficult, and in some cases impossible, for Airbnb to avoid liability for content posted by third parties.

demands removal of listings at the whim of County officials.

The reasoning of *Homeaway*—as expanded upon by *Calise*, *Estate of Bride*, and *Doe*—supports immunity here. Consistent with the Ninth Circuit's guidance to protect this immunity broadly and at the early stages of litigation, preliminary injunctive relief is warranted.

## IV.    Absent Preliminary Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm.

The loss of constitutional rights, even for short periods of time, constitutes irreparable injury. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Plaintiffs additionally suffer tangible, irreparable injuries. The County's failure to stand up a bona fide licensing regime allowing short-term rentals to operate has left numerous GLVSTRA members unable to apply for or obtain a license, even when they are eligible under state law, while the County undertakes aggressive enforcement action. Flores Decl. ¶¶ 3-9. Plaintiff Thomas McKannon, for example, owns property in Clark County and is eligible under AB 363 to use that property as a short-term rental—but is barred by the Ordinance because his property is in Mount Charleston. Flores Decl. ¶ 4. As explained, the County's scheme violates state law (and other constitutional provisions) by making it impossible for many property owners to offer their homes for short-term rentals (and otherwise exercise their constitutional rights). And without short-term rental income, some GLVSTRA members will lose their homes, Flores Decl. ¶ 11, resulting in harm not only to the hosts but also to Airbnb.

The County's plan to enforce "all parts" of its platform requirements on September 1, 2025, Countryman Decl. Ex. 1, only amplifies the "credible threat of citation" to hosts "for violations of an ordinance that conflicts with state law," underscoring the irreparable harm. *Haw. Legal Short-Term Rental All.*, 709 F. Supp. 3d at 1155 (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). For example, the Ordinance authorizes the County to levy draconian fines against hosts for alleged violations. § 7.100.230(d). If a host fails to pay a fine levied under this illegal framework within 15 days, the Code deems the fine to "constitute a recordable lien," and permits the County to transform the fine into a special assessment. *Id.* § 1.14.120. Some GLVSTRA members have been

subject to fines and special assessments with bills due in full in mid-August. Flores Decl. ¶ 12. If the special assessments are not paid, the County may at any time in the next three years "seize any property, real or personal, of the person and sell" enough of it "to pay the amount due." *Id.* § 4.12.605. In other words, hosts risk losing their home if they do not comply with a short-term rental regime that violates their constitutional and statutory rights.[5]

Airbnb also faces irreparable harm. Imminent enforcement of the County Code against Airbnb puts it "to a kind of Hobson's choice," *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009), of deciding between violating the Ordinance or participating in the administration of the unlawful Ordinance to the detriment of Airbnb and hosts alike. The County Code requires Airbnb to "verify" that a short-term rental unit "has been issued a valid unexpired short-term rental license" before "listing or advertising" the unit, and further requires Airbnb to "[d]eactivate all listings which lack a valid state or county business license." Clark County Code § 7.110.080(a), (c). But Airbnb cannot actually "verify" which listings need to obtain a license unless the County provides Airbnb with that information or makes it publicly available. Countryman Decl. ¶¶ 8-9. As one example, county law exempts certain units from licensing requirements, such as "vacation home[s]" as defined in the County Code. *See id.* § 7.100.040. Without information from the County about which units qualify as a "vacation home," as defined by the Ordinance (*i.e.*, a residential dwelling in a condominium hotel or resort condominium, *see id.* § 6.12.982), and are therefore exempt from permitting requirements, Airbnb has no ability to sort the short-term rentals

---

[5] Plaintiff GLVSTRA—an organization dedicated to advocating for STR owners and operators in the County—has associational standing to seek equitable relief on behalf of its members because (a) its members would otherwise have standing to sue; (b) the interests GLVSTRA seeks to protect are germane to its purpose; and (c) there is no need for individual members to participate in the suit. *See Students for Fair Admission, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199-200 (2023); *see also* Flores Decl. (describing GLVSTRA purpose and member injuries). Further, GLVSTRA has standing on behalf of both named and unnamed members affected by the challenged actions. *See, e.g.*, *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *11 (9th Cir. Aug. 1, 2025).

that can be listed from those that cannot be. A preliminary injunction is warranted to avoid forcing Airbnb to enforce an unlawful Ordinance (or over-enforcing it given uncertainty regarding whether the Ordinance applies to particular listings).

"When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its . . . defenses—there is no adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). A "very real penalty attaches to" Airbnb "regardless of how [it] proceed[s]." *Am. Trucking*, 559 F.3d 1058. That is irreparable harm. *See KalshiEX, LLC v. Hendrick*, 2025 WL 1073495, at *7 (D. Nev. Apr. 9, 2025) ("A credible threat of imminent prosecution for a state violation that conflicts with federal law can establish a likelihood of irreparable harm."); *see also Airbnb, Inc. v. City of Boston*, 386 F. Supp. 3d 113, 124 (D. Mass. 2019) ("Airbnb has established it would be irreparably harmed if it were required to comply with an unlawful mandate [that is likely preempted by federal law].").

## V.    The Balance of the Equities and Public Interest Support Preliminary Relief.

The balance of equities and public interest strongly favor a preliminary injunction. "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The County has no legitimate interest in enforcing an invalid law. *See, e.g.*, *Am. Trucking*, 559 F.3d at 1059–60 (balance of equities and public interest favored preliminarily enjoining a likely preempted ordinance); *NetChoice v. Bonta*, 2025 WL 1918742, at *11 (N.D. Cal. July 11, 2025) (no "protectible interest in enforcing federally preempted state law"). The State, by contrast, has a public interest in preserving its "plenary authority" to "restrict and limit the exercise of all municipal powers." *Lamb*, 90 Nev. at 333; *see Am. Trucking*, 559 F.3d at 1059-60 (recognizing "public interest represented in Congress' decision to deregulate"). Further, homeowners' property rights date back to before the Founding and serve as a bulwark for individual liberty—the infringement of those fundamental rights harms the public interest. *See Am. Beverage Ass'n v. City*

*and Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019).

Meanwhile, until its recent precipitous actions, the County has never acted as if there is any urgent need to rush its attack on short-term rentals. It has already delayed enforcement for three years, while utterly failing to stand up a functional licensing regime. A modest further delay to allow the County to develop a functional licensing system and this Court to evaluate the legal deficiencies on the merits, plainly strikes an equitable balance and serves the public interest.

Under the preemptive force of AB 363, the Court should enjoin all Ordinance provisions that on their face or as applied deny hosts the opportunity to obtain a short-term rental license that would be allowed under state law—including but not limited to the Ordinance's 1% cap, § 7.100.050; excessive residential unit eligibility restrictions, § 7.100.080; and arbitrary and burdensome application procedures, § 7.100.100. The Court should enjoin enforcement of the license requirement for operating a short-term rental, § 7.100.030, and all enforcement provisions, including those related to fines and those directed to platforms like Airbnb, because the County has not operated a bona fide licensing scheme, on preemption and due process grounds. *See*, *e.g.*, §§ 7.100.230, 7.110.120, 7.110.080(c). The Court should enjoin the Code's short-term rental verification requirements on platforms, *see* §§ 7.110.080(a), (c), 7.110.090, because they are instrumental to the conflict with AB 363, and because of Section 230's grant of immunity.[6]

## 4.  CONCLUSION

Plaintiffs respectfully request that the Court issue a preliminary injunction no later than September 1, 2025, enjoining enforcement of Chapters 7.100 and 7.110 of the Clark County Code.

---

[6] To ensure that the parties obtain full relief, the Court's injunction can and should be county-wide. *See* Fed. R. Civ. P. 65(d)(2) (injunction binds parties *and* their "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation with" them). County-wide relief is necessary to ensure that Ordinance is not enforced against any GLVSTRA members. *See, e.g.*, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996) (statewide injunction appropriate because officers not likely to discern plaintiff status before enforcing); *Vasquez Perdomo*, 25-4312, 2025 WL 2181709, at *22 (district-wide injunction necessary given First Amendment issues with identifying plaintiff association members).

Respectfully submitted,

DATED: August 8, 2025

*/s/ Shannon R. Wilson*_____
Mark A. Hutchison (4639)
Shannon R. Wilson (9933)
Ramez A. Ghally (15225)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Tel: (702) 385-2500
Fax: (702) 385-2086
mhutchison@hutchlegal.com
swilson@hutchlegal.com
rghally@hutchlegal.com

Paul D. Clement (Virginia Bar No. 37195)
*(Pro Hac Vice Pending)*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
paul.clement@clementmurphy.com

*Attorneys for Plaintiffs*

Sarah E. Harrington (*Pro Hac Vice Forthcoming*)
David M. Zionts (*Pro Hac Vice Forthcoming*)
Alexander A. Berengaut (*Pro Hac Vice Forthcoming*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
sharrington@cov.com
dzionts@cov.com
aberengaut@cov.com
(202) 662-6000

*Attorneys for Plaintiff Airbnb, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of HUTCHISON & STEFFEN, PLLC and that on this 8th day of August, 2025, I caused the above and foregoing document, entitled **PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW** to be served as follows:

☒      by placing the same to be deposited for mailing in the Unites States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada; and/or

☐      to be sent via facsimile; and/or

☒      to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

to the parties or attorney(s) listed below at the address and/or facsimile number indicated below:

Clark County
500 S. Grand Central Parkway 6th Floor
Las Vegas, NV 89155
*Defendant*

*Via U.S. Mail*

**ALL PARTIES ON THE E-SERVICE LIST**

*Via CM/ECF*


*/s/ Heather Shepherd*

_____
An Employee of Hutchison & Steffen, PLLC

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Declaration of Shannon R. Wilson, Esq. |
| B | Declaration of David Countryman |
| C | Declaration of Jacqueline Flores |