UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GREATER LAS VEGAS SHORT-TERM RENTAL ASSOCIATION, *et. al*.,

Plaintiffs,

v.

CLARK COUNTY, *et. al*.,

Defendants.

Case No. 2:25-cv-01173-MMD-BNW

ORDER

## I. SUMMARY

Plaintiffs[1] sued Defendants Clark County and Attorney General Aaron D. Ford alleging violations of Nevada state law, constitutional due process, and Section 230 of the Stored Communications Act[2] ("SCA").[3] (ECF No. 14.) Before the Court is Plaintiffs' emergency motion for a preliminary injunction (ECF No. 15 ("Motion")[4]) in which Plaintiffs

[1]Greater Las Vegas Short-Term Rental Association ("Greater Las Vegas" or "GLVSTRA"), Jacqueline Flores, Louis Koorndyk, Estrelita Koorndyk, Haan's Properties, LLC, LK's Properties, LLC, Thomas M. Mckannon, Debra Hansen, John Hansen, Troy Uehling, Philip Johnson, Samuel Hankins, Lisa Hankins, 4502 Palm Mesa, LLC, and Airbnb, Inc.

[2]In their Complaint, Plaintiffs challenge multiple provisions of the above-referenced Ordinance as unlawful and preempted by the Section 230 of the Stored Communications Act ("SCA") (ECF No. 14 at 88-90), 18 U.S.C. § 2702. However, in their Motion, Plaintiffs argue preemption under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1) (ECF No. 15 at 19-23).

[3]Plaintiffs initiated this action on June 30, 2025 (ECF No. 1). They subsequently filed a first-amended complaint (ECF No. 14) and motion for emergency relief (ECF No. 15) on August 8, 2025.

[4]Defendants filed a response (ECF No. 25), and Plaintiffs replied (ECF No. 29). The Court also set an expedited briefing schedule and hearing on the Motion ("the Hearing"). (ECF No. 16.) The Court refers to arguments presented by counsel for Plaintiff

seek to enjoin the enforcement of Chapters 7.100 and 7.110 of the Clark County Code (the "Ordinance")[5] aimed at regulating short-term rentals and the online platforms that facilitate their listings.[6] Because Plaintiffs have shown that they are likely to succeed on the merits of their Section 230 claim and that they will be irreparably harmed absent preliminary injunctive relief, the Court necessarily finds that the balance of equities tips in their favor and that such relief serves the public interest. Accordingly, the Court will grant the Motion.

## II. BACKGROUND

This case arises out of Clark County's effort to regulate short-term rental accommodations and the online platforms that advertise host listings. (ECF No. 14 at 2, 4.) Plaintiff GLVSTRA is a Nevada nonprofit advocacy group composed of unincorporated Clark County residents interested in operating residential short-term rentals[7] throughout

---

Airbnb and counsel for Clark County at the Hearing, though the transcript of the Hearing is not available.

[5]The Ordinance, including Chapters 7.100 and 7.110, was enacted on June 21, 2022. (ECF No. 14 at 34.) However, the County only recently announced its intent to begin enforcing Chapter 7.110—the provision relating to internet platform verification requirements—beginning on September 1, 2025. (ECF No. 14-1 at 4; ECF No. 25-3 at 4; ECF No. 15-2 at 2, 6.)

[6]In their Motion, Plaintiffs challenge the County's Ordinance and its licensing regime on three grounds: (1) "preemption" under Nevada state law; (2) infringement upon constitutional due process rights; and (3) preemption under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c). (ECF No. 15 at 4.) At the Hearing, the Court denied Plaintiffs' request to consider the first and second portions of their Motion pertaining to the licensing regime on an emergency basis and directed Plaintiffs to refile their request for a preliminary injunction as a regular motion to be considered in ordinary course rather than on an expedited schedule. (ECF No. 32.) Accordingly, the Court will only address Plaintiffs' Section 230 argument as to the platform provisions of the Ordinance.

[7]Under Clark County Code § 7.100.020(r), "short-term rental unit" means a residential unit or room within a residential unit that is made available for rent for thirty consecutive days or less. (*See* ECF No. 14 at 3.)

the greater Las Vegas area. (*Id.* at 9.) GLVSTRA is composed of 856 members[8] who claim injury by the requirements of Clark County's short-term rental ordinance, which they contend violates Nevada Assembly Bill 363[9] ("AB 363") (codified at NRS § 244.35351, *et seq*.). (*Id.*) Plaintiff Airbnb, Inc. is an online platform that operates a marketplace for listing and booking short-term and long-term housing accommodations. (*Id.* at 21; ECF No. 15-2 at 2.) It facilitates communication between "hosts"—who can create listings to rent their property—and "guests." (*Id.*)

**A. Nevada Regulation of Short-Term Rentals**

In 2021, Nevada passed the above-mentioned law—AB 363—requiring counties to enact ordinances regulating short-term rentals. NRS § 244.353545.1. The statute prohibited Clark County's longstanding and outright ban on short-term rentals. (*See* ECF No. 15 at 4); *Greater Las Vegas Short Term Rental Ass'n v. Clark Cnty.* ("*GLVSTRA*"), 555 P.3d 265, 266 (Nev. 2024); *see also* NRS § 244.35351-244.35359. In response to the Legislature's directive, Clark County repealed its ban and implemented regulations permitting short-term rentals subject to a licensing requirement set forth in the Ordinance. (ECF No. 15 at 4.) Thus, the Ordinance Plaintiffs challenge is Clark County's most recent attempt at regulating short-term rentals as well as the online platforms that facilitate them.

Plaintiffs contend that the County's licensing regime "arbitrarily bars most property owners from applying for a license" through its "burdensome" application requirements. (ECF No. 15 at 14.) For example, Plaintiffs assert that, under its Ordinance, the County has only opened its license application portal once and has not accepted any new

---

[8]GLVSTRA members include Plaintiffs Jacqueline Flores – President and Director of GLVSTRA – and Louis and Estrelita Koorndyk, who were issued licenses by Clark County and who are subject to the County's regulatory requirements. (ECF No. 14 at 9-10.)

[9]Under AB 363, "[a] board of county commissioners shall not enact or enforce a complete prohibition on the rental of a residential unit or a room within a residential unit, and any such ordinance is "null and void." NRS § 244.353545.4; (*see also* ECF No. 14 at 5, 32).

applications for the past two years. (*Id.* at 3.) And, of the few applications the County has accepted, processing has been exceptionally slow, leaving most applicants "in limbo." (*Id.*) Despite governing a jurisdiction with approximately one million residents and 300,000 homes, the County has issued only 174 licenses. (*Id.*) Thus, Plaintiffs maintain that the County "has failed to stand up a meaningful licensing scheme" and that, in practice, its regulations amount to the functional equivalent of a ban. (*Id.*)

**B. The Clark County Ordinance**

Under Clark County's Ordinance, adopted on June 21, 2022 and codified in Chapters 7.100 and 7.110 of the County Code, property owners must obtain and annually renew both a business license and a short-term rental license to operate a short-term rental within the County.[10] (ECF No. 14 at 5, 34, 39.); *see also* Clark County Code §§ 7.100.030; 7.100.060; 7.100.130. Certain eligibility criteria limit which property owners may apply for a license. (ECF No. 14 at 36-37.) For example, homeowners in certain townships or "[w]ithin one thousand feet of any [other] short-term rental unit" are barred from obtaining a license. *See* Clark County Code § 7.100.080(c), (f)(2); (ECF No. 15 at 6). Likewise, under § 7.100.050, there is a one-percent cap on the number of short-term rental licenses that may be issued per year. (*See* ECF No. 14 at 5; ECF No. 15 at 6.)

Additionally, under Chapter 7.110, § 7.110.030, "accommodations facilitators,"[11] such as Plaintiff Airbnb, "may not engage in business" with the County without first obtaining a valid and unexpired business license. (ECF No. 14 at 47; ECF No. 25-3.) The Ordinance directly imposes verification, monitoring, and deactivation obligations on

---

[10]Under § 7.100.030 of the Clark County Code, "[n]o person shall engage in the business of operating a short-term rental unit without first obtaining and thereafter maintaining a valid unexpired business license pursuant to this chapter."

[11]Under § 7.100.020(a) of the Clark County Code, an accommodations facilitator "means a person, other than the owner, lessee or other lawful occupant of a residential unit, or a manager of a residential unit, who, for a fee or other charge, brokers, coordinates, makes available or otherwise arranges for the rental of a short-term rental unit. The term includes, without limitation, a hosting platform." (ECF No. 15-2 at 6.)

hosting platforms which, according to the County, will be enforced beginning September 1, 2025.[12] (ECF No. 14 at 6-7; ECF No. 14-1 at 4; ECF No. 25-3 at 4.) Under § 7.110.080(a)[13] and (c)[14]'s "takedown" requirements, platforms must verify that any homeowner's short-term rental they list holds a valid, current license before advertising it and must remove or deactivate any listings that do not meet this requirement. (ECF No. 14 at 7; ECF No. 15 at 6.) Under § 7.110.080(b), platforms must monitor all listings and advertisements to ensure that they "include the short-term rental license number and state business license number and the maximum occupancy limitations for the residential unit." (ECF No. 15 at 21.) Moreover, under § 7.110.090[15], platforms may not "accept or facilitate the payment of consideration in exchange for the use or listing of [an unlicensed] short-term rental." (*Id.* at 21.) If a platform fails to comply with these obligations, violations are punishable by a $500 fine for the first instance and $1,000 for each subsequent violation. *See* § 7.110.120. Thus, Plaintiffs assert that, by requiring Airbnb to monitor and remove listings created by third-party hosts or else face liability in the form of fines, the challenged provisions unlawfully compel the platform to police third-party user content in violation of Section 230. (ECF No. 14 at 93.)

---

[12]On May 6, 2025, Airbnb received a letter dated April 23, 2025 from Clark County's Department of Business License announcing the County's intent to commence enforcement of Chapter 7.110 on September 1, 2025. (ECF No. 15-2 at 2, 6.) The County does not dispute the September 1, 2025 enforcement date. (ECF No. 25 at 6.)

[13]Under § 7.110.080(a), "[a]ll licensees shall: [b]efore listing or advertising a short term rental unit, verify that the short term rental unit has been issued a valid unexpired short-term rental license."

[14]Under § 7.110.080(c), "[a]ll licensees shall: [d]eactivate all listings which lack a valid state or county business license number, or which the department otherwise requests the licensee remove, within five business days of receipt of the request, except that any listing which, in the determination of the department or of a peace officer poses an imminent threat to the health, safety and welfare of the general public, shall be promptly deactivated."

[15]Under § 7.110.090, "[n]o person may accept or facilitate the payment of consideration in exchange for the use or listing of a short-term rental if the residential unit or room within the residential unit has not been issued a short-term rental license pursuant to Chapter 7.100 of this code."

Plaintiffs seek to preliminarily enjoin Clark County from enforcing its platform provisions, including: (1) the "takedown" requirements under § 7.110.080(a) and (c), which compel platforms to verify and deactivate any unlicensed listings; (2) the duty to "monitor" under § 7.110.080(b), which requires platforms to screen listings for the inclusion of short-term rental and state business license numbers; and (3) the prohibition on processing payments for unlicensed short-term rentals under § 7.110.090.[16] (ECF No. 15 at 26.) Plaintiffs allege that, absent injunctive relief, both short-term rental owners and Airbnb will suffer irreparable harm. (*Id.* at 23.)

## III. DISCUSSION

A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)); *see also Alliance for the Wild Rockies v. Cottrell ("Alliance")*, 623 F.3d 1127, 1131 (9th Cir. 2011). To qualify for preliminary injunctive relief, a plaintiff must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20.

The Court will first address the parties' arguments under the *Winter* framework as to Plaintiffs' likelihood of success on the merits and whether, absent injunctive relief, Plaintiffs will suffer irreparable harm before turning to the balancing of the equities and the public interest prongs, which will be addressed together. In sum, the Court finds that Plaintiffs satisfy all four *Winter* factors and will grant preliminary injunctive relief.

### A. Likelihood of Success on the Merits

Plaintiffs argue they are likely to prevail on the merits because Chapter 7.110 of the Ordinance is preempted by Section 230 of the CDA and because Airbnb enjoys

---

[16] As mentioned above, in their Motion, Plaintiffs seek enjoinment of both Chapter 7.100—the licensing provision—and Chapter 7.110—the platform provision—of the Clark County Code. (ECF No. 15 at 26.) However, the Court will only consider Plaintiffs' request for emergency relief enjoining Chapter 7.110.

immunity under the statute. (ECF No. 15 at 19-23.) Section 230 shields web providers from liability for user-generated content and, under the federal statute's core immunity provision—§ 230(c)(1)— "[n]o provider or user of an interactive computer service[17] shall be treated as the publisher or speaker of any information provided by another information content provider[18]." The CDA includes an express preemption clause, which states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3); *see also Airbnb, Inc. v. City and Cnty. of S.F.*, 217 F. Supp. 3d 1072 (N.D. Cal. 2016).

In a three-prong test set forth in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), the Ninth Circuit construed the above provisions to extend Section 230(c)(1) immunity to "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019). Here, the parties do not dispute that Airbnb is an interactive computer service provider under Section 230.

Partly at issue is the second element: whether the Ordinance treats Airbnb as a "publisher or speaker" in a way that is prohibited by the CDA.[19] Plaintiffs assert that the Ordinance "expressly impose[s] duties on platforms due to their status as a publisher" and that those duties relate exclusively to platforms' role as a "publisher of third-party content (i.e., host listings)." (ECF No. 15 at 20.) Relying on *Calise v. Meta Platforms, Inc.*,

---

[17]Under 47 U.S.C. § 230(f)(2), an interactive computer service is "[a]ny information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."

[18]Under 47 U.S.C. § 230(f)(3), an information content provider is "[a]ny person or entity responsible, in whole or in part, for the creation or development of information provided through the Internet or interactive computer service."

[19]While the CDA does not define "publisher," the Ninth Circuit generally defines "publication" to "involve[ ] reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *See HomeAway.com, Inc.*, 918 F.3d at 681-82 (citing *Barnes*, 570 F.3d at 1102).

103 F.4th 732, 740-42 (9th Cir. 2024), Plaintiffs contend that Section 230 immunity ought to apply when a legal duty "obligate[s]" hosting platforms to "monitor third-party content" and "engage in other core publishing functions."[20] (ECF No. 15 at 20); *see also Barnes*, 570 F.3d at 1102. The Court agrees with Plaintiffs and finds that Airbnb is a publisher or speaker within the meaning of Section 230. Below, the Court will address whether the challenged verification, monitoring, and deactivation requirements amount to a prohibited "duty to monitor" third-party content.

Last year, in *Calise v. Meta Platforms,* the Ninth Circuit addressed the scope of platform immunity and clarified that, under Section 230, a platform cannot be held liable for a "duty to monitor" third-party content. *See* 103 F.4th at 742; *see also Doe 1 v. Twitter, Inc.*, 2025 WL 2178534, at *2 (9th Cir. 2025) (holding that "if the provider is disseminating content created by others, it is functioning as a publisher and is immune from liability related to that content") (citation omitted). There, the Ninth Circuit articulated a two-part framework for analyzing the legal duty underlying a plaintiff's claim, asking: (1) "what is the 'right' from which the duty springs?" (citing *Barnes*, 570 F.3d at 1107; *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021)); and (2) "what is this duty requiring the defendant to do?" *See Calise*, 103 F.4th at 742.Specifically, as to the first prong, the Ninth Circuit held that Section 230 immunity does not apply if the duty "springs from something separate" from a platform's status as a publisher—such as a contractual obligation. *See Calise*, 103 F.4th at 740, 742.

The Court agrees with Plaintiffs that the "duty to monitor" springs from Airbnb's status as a publisher of host listings.[21] At the Hearing, Defendant analogized to the *Calise*

---

[20]Airbnb bears the burden of establishing that it is "immune" under Section 230. *See Calise*, 103 F.4th at 738 n.1.

[21]Moreover, in their Motion, Plaintiffs point out in pertinent part that the preamble of the County's Ordinance refers to accommodations facilitators as "advertis[ers]" of short-term rental listings, *see* § 7.100.010(d), implying that the duties underlying their claim spring directly from Airbnb's status as a publisher as defined in the CDA. (*See* ECF No. 15 at 20 n.3.)

decision and contended that the duties at issue were "contractual" in nature because they "sprang" from regulatory obligations tied to the County's business license requirement (*see* ECF No. 25-3) and thus fell outside the scope of Section 230 immunity. (ECF No. 32.) Said otherwise, platforms like Airbnb are only required to monitor the content of host listings if they are licensed to do business in Clark County. (*See generally* ECF No. 25-3.) But, as Plaintiffs countered at the Hearing, even assuming Airbnb's relationship with the County bears some contractual characteristics, the regulatory duties imposed by the Ordinance are mandatory, not voluntary, as in a true contractual arrangement. (ECF No. 32.); *see also Barnes*, 570 F.3d at 1107 (distinguishing "behavior that is identical to publishing or speaking" from a promissory estoppel contract-based claim, where "[p]romising is different because it is not synonymous with the performance of the action promised"). Thus, the Court is not persuaded by Defendant's circular reasoning, which would, in effect, erode Section 230's immunity.

Next, the Court applies the second prong of the *Calise* duty analysis to assess whether the platform provisions of the Ordinance—including the duty to verify, monitor, and deactivate unlicensed host listings—effectively require Airbnb to "monitor third-party content" as defined under Section. "If [the duty] obliges the defendant to 'monitor third party content'—or else face liability—then that too is barred by § 230(c)(1)," and Section 230 immunity attaches. *Calise,* 103 F.4th at 742 (citation omitted). Plaintiffs insist that these provisions, individually and taken together, impose an improper obligation on platforms to engage in content moderation, drawing a distinction between the Ordinance and the Santa Monica ordinance in *HomeAway.com*. (ECF No. 15 at 19-23.) In *HomeAway.com*, the Ninth Circuit affirmed denial of preliminary injunctive relief, holding that an ordinance regulating booking transactions listed in a city-run registry of rental properties "is not 'inconsistent' with the CDA" because it would not impose a duty on websites to monitor third-party content. *See* 918 F.3d at 680, 683. Plaintiffs contend unlike the Santa Monica ordinance in *HomeAway,* the Clark County Ordinance requires that

postings be "verified prior to publication," "monitored to ensure they contain certain information," or "removed when certain conditions are met." (ECF No. 29 at 8 (citing § 7.110.080(a)-(c)).) The Court is persuaded that these requirements distinguish the Clark County Ordinance from the ordinance at issue in *HomeAway*. Moreover, at the Hearing, Defendant conceded that the provisions in question do impose a duty on platforms like Airbnb to monitor content. (ECF No. 32.) Thus, the Court concludes that, given this distinction and, particularly, given Defendant's concession, the challenged provisions, both individually and combined, amount to a duty to monitor third-party content. And, therefore, under *Calise*'s guidance, Airbnb cannot be held liable for a "duty to monitor" third-party content where, as here, "liability" arises in the form of monetary penalties—i.e., fines. *See* 103 F.4th 732, 742 (9th Cir. 2024).

Accordingly, the Court finds Plaintiffs have shown that the challenged platform provisions impose a "duty to monitor" third-party content (i.e., host listings) and seek to hold Airbnb liable for failure to do so. Plaintiffs have thus demonstrated likelihood of success on the merits of their Section 230 claim.

**B. Irreparable Harm**

Proceeding to the second *Winter* factor, a plaintiff must prove a likelihood of irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20. Irreparable harm is proven by demonstrating "immediate threatened injury." *See, e.g.*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988) (citation omitted) (denying preliminary injunctive relief where "liability [was] too remote and speculative to constitute an irreparable harm").

Here, Plaintiff Airbnb argues that the likelihood of irreparable harm is two-fold: absent a preliminary injunction, both homeowners and platforms would suffer. On the one hand, Airbnb argues that forcing it to remove listings would harm homeowners by preventing them from renting their properties. (ECF No. 29 at 12.) On the other hand, Airbnb asserts that it will incur "unrecoverable" costs in complying with the platform

provisions of the Ordinance if a preliminary injunction does not issue. (*Id.*) At the Hearing, Airbnb underscored the significant administrative burden and strain on resources it would face if required to review, monitor, and deactivate host listings—some of which may be eligible but still pending approval from the County.[22] (ECF No. 32.) The Court agrees with Airbnb. *See NetChoice v. Bonta*, 2025 WL 1918742, at *10 (N.D. Cal. 2025) (granting preliminary injunction and holding that being "forced to incur unrecoverable [compliance] costs" may constitute irreparable harm, particularly where parties are unlikely to recover monetary damages); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (holding that "where parties cannot typically recover monetary damages flowing from their injury ... economic harm can be considered irreparable"). In *Bonta*, the district court held that an internet trade association, NetChoice, would likely incur "unrecoverable" compliance costs under a California law imposing record-keeping and disclosure obligations on online marketplaces regarding third-party sellers. *See* 2025 WL 1918742, at *10. As such, the Court is unpersuaded by Clark County's argument that "there can never be a showing of irreparable harm because financial compensation can make Airbnb whole." (ECF No. 25 at 19 (referencing potential liability arising from the County's system of monetary penalties).)

Moreover, as mentioned, the County has not accepted short-term rental license applications from hosts for the past two years. (ECF No. 29 at 3.) The County has also acknowledged a backlog and delays in its own license approval process. (ECF No. 25 at 14-15; *see also* ECF No. 15-2 at 8.) Therefore, given the County's alleged impracticable

[22]In his declaration, Director of Business Operations and Strategy for Airbnb, David Countryman, outlines the difficulties platforms are likely to face if the challenged provisions are enforced. Under the current scheme, "platforms may be forced to deactivate listings from hosts who have not yet received a license nor been able to apply for one" and "[p]latforms may be forced to deactivate listings from hosts who actually are licensed but whose status cannot be timely verified." (ECF No. 15-2 at 3.) Moreover, in a letter to Clark County Manager Kevin Schiller, Airbnb asserts that the County has "failed to enable a workable system to afford platforms any opportunity to assess hosts' status," thereby increasing the resources the platform would be required to expend to comply with the Ordinance. (ECF No. 15-2 at 8.)

licensing system, the Court finds that imposing an obligation on Airbnb to review, monitor, and remove content imposes major compliance costs akin to the "unrecoverable costs" described in *Bonta*. *See* 2025 WL 1918742, at *10.

While Clark County disputes the nature and severity of the harms threatened pending enforcement, it fails to address the ways in which the administrative compliance burdens are likely to impact Airbnb. Based on the reasons discussed above, the Court finds Plaintiffs have shown that imminent irreparable harm will result unless the Court preliminarily enjoins the County's enforcement of the platform provisions.

**C. Balance of the Equities & the Public Interest**

The Court considers the third and fourth factors together.[23] Because the Court concludes Plaintiffs are likely to both succeed on the merits and suffer irreparable harm, it necessarily finds that the balance of the equities and the public interest also weigh in favor of granting the injunction. "To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). The Court must then weigh "the hardships of each party against one another." *Id*. As to public interest, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

The County fails to explain how a delay in the Ordinance's September 1st enforcement date would cause harm to either the County or to the public interest, offering the Court no compelling reason to disturb the status quo[24] with respect to the platform

[23]"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020); *see also Baird v. Bonta*, 81 F.4th 1036, 1039-40 (9th Cir. 2023).

[24]The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to

provisions—particularly given that enforcement has already been postponed for a considerable length of time. (*See* ECF No. 25 at 25.) Moreover, issuance of a preliminary injunction would serve the public interest. The Court agrees with Plaintiffs that there is a compelling public interest in not subjecting platforms such as Airbnb to "unrecoverable" compliance costs. (ECF No. 29 at 12.) In addition, under the County's current licensing scheme, homeowners have lacked a practical means of applying for licenses for the past two years. Accordingly, the Court finds the balancing of the equities and public interest factors weigh in favor of granting Plaintiffs' Motion.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' emergency motion for a preliminary injunction (ECF No. 15) is granted. Pending a final decision on the merits, Clark County is enjoined from enforcing § 7.110.080(a)-(c), § 7.110.090, and § 7.110.120 of the Clark County Code as applied to Plaintiff Airbnb.

DATED THIS 28th Day of August 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

intervene to secure the positions until the merits of the action are ultimately determined. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).