UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GREATER LAS VEGAS SHORT-TERM RENTAL ASSOCIATION, *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY, *et. al.*,<br><br>Defendants. | Case No. 2:25-cv-01173-MMD-BNW<br><br>ORDER |

**I.    SUMMARY**

Plaintiffs[1] sued Defendants Clark County and Attorney General Aaron D. Ford alleging violations of Nevada state law, constitutional due process, and Section 230 of the Stored Communications Act ("SCA").[2] (ECF No. 14 ("Complaint" or "FAC").) Before the Court is Plaintiffs' renewed motion for a preliminary injunction (ECF No. 39 ("Motion")[3])

---

[1] Greater Las Vegas Short-Term Rental Association ("Greater Las Vegas" or "GLVSTRA"), Jacqueline Flores, Louis Koorndyk, Estrelita Koorndyk, Haan's Properties, LLC, LK's Properties, LLC, Thomas M. Mckannon, Debra Hansen, John Hansen, Troy Uehling, Philip Johnson, Samuel Hankins, Lisa Hankins, 4502 Palm Mesa, LLC, and Airbnb, Inc.

[2] Plaintiffs initiated this action on June 30, 2025 (ECF No. 1). They subsequently filed a first amended complaint (ECF No. 14 ("FAC")) and first motion for emergency preliminary injunctive relief (ECF No. 15) on August 8, 2025. The Court denied Plaintiffs' request to consider the first and second portions of their first motion on an emergency basis and directed Plaintiffs to refile their request as a regular motion to be considered in ordinary course. (ECF No. 32.) Plaintiffs filed their renewed motion for preliminary injunction (ECF No. 39) on September 11, 2025.

[3] Defendants filed a response (ECF No. 44), and Plaintiffs replied (ECF No. 45). The Court also held a hearing on the Motion ("the Hearing"). (ECF No. 46.) The Court refers to arguments presented by counsel for Plaintiffs and counsel for Defendants Clark County and AG Ford at the Hearing, which are available in the transcript. (*See* ECF No. 48.) At the Hearing, the Court granted in part and denied in part Defendant AG Ford's

in which Plaintiffs seek to enjoin the enforcement of Chapters 7.100 and 7.110 of the Clark County Code (the "Ordinance")[4] aimed at regulating short-term rentals on the grounds of state law preemption and procedural due process.[5] Because Plaintiffs have shown that they are likely to succeed on the merits of their procedural due process claim and that they will be irreparably harmed absent preliminary injunctive relief, the Court necessarily finds that the balance of equities tips in their favor and that such relief serves the public interest. Accordingly, the Court will grant the Motion in part as to the license requirement (§7.100.030) and selected enforcement provisions (§§ 7.100.230(d)(1)(I), 7.100.220, 7.100.250, and 1.14.020(g)) of the Ordinance.

## II.   BACKGROUND

This case arises out of Clark County's effort to regulate short-term rental accommodations and the online platforms that advertise host listings. (ECF No. 14 at 2, 4.) Plaintiff GLVSTRA is a Nevada nonprofit advocacy group composed of unincorporated

---

motion to dismiss (ECF No. 33). (ECF No. 48 at 9.) The Court then heard oral argument on the Motion (ECF No. 39). (ECF No. 48 at 13.)

[4]The Ordinance, including Chapters 7.100 and 7.110, was enacted on June 21, 2022. (ECF No. 14 at 34.) However, the County only recently announced its intent to begin enforcing selected provisions, such as Chapter 7.110—the provision relating to internet platform verification requirements—beginning on September 1, 2025. (ECF No. 14-1 at 4; ECF No. 39-3 at 3, 6.)

[5]In their initial emergency motion for preliminary injunctive relief (ECF No. 15), Plaintiffs challenged the County's Ordinance and its licensing regime on three grounds: (1) "preemption" under Nevada law; (2) infringement upon constitutional due process rights; and (3) federal preemption under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c). (ECF No. 15 at 4.) The Court denied Plaintiffs' request to consider the first and second portions of their motion pertaining to the licensing regime on an emergency basis and, as mentioned, directed Plaintiffs to refile their request for a preliminary injunction as a regular motion to be considered in ordinary course. (ECF No. 32.) The Court then granted Plaintiffs' emergency motion (ECF No. 15) and enjoined Clark County from enforcing the platform provisions of the Ordinance (§§ 7.110.080(a)-(c), 7.110.090, and 7.110.120 of the Clark County Code) as applied to Plaintiff Airbnb. (ECF No. 36.) The Court will now address only the procedural due process argument in the discussion below.

Clark County residents interested in operating residential short-term rentals[6] throughout the greater Las Vegas area. (*Id.* at 9.) GLVSTRA is composed of 856 members[7] who claim injury by the requirements of Clark County's short-term rental ordinance, which they contend violates Nevada Assembly Bill 363[8] ("AB 363") (codified at NRS § 244.35351, *et seq.*). (*Id.*) Plaintiff Airbnb, Inc. is an online platform that operates a marketplace for listing and booking short- and long-term housing accommodations. (*Id.* at 21.)

### A. Nevada Regulation of Short-Term Rentals and Clark County's Escalating Enforcement of its Licensing Regime

In 2021, Nevada passed the above-mentioned law—AB 363—requiring counties to enact ordinances regulating short-term rentals. NRS § 244.353545.1. The legislation prohibited Clark County's longstanding ban on short-term rentals and mandated that the County implement a process allowing for short-term rentals to operate. (*See* ECF No. 39 at 5-6); *Greater Las Vegas Short Term Rental Ass'n v. Clark Cnty.* ("*GLVSTRA*"), 555 P.3d 265, 266 (Nev. 2024); *see also* NRS § 244.35351-244.35359. In response to the legislature's directive, Clark County repealed its ban and implemented regulations permitting short-term rentals subject to a licensing requirement set forth in the Ordinance. (ECF No. 39 at 6); *see also* Clark County Code §§ 7.100.030; 7.100.060; 7.100.130. Thus, the Ordinance Plaintiffs challenge is Clark County's most recent attempt at regulating short-term rentals.

---

[6]Under Clark County Code § 7.100.020(r), "short-term rental unit" means a residential unit or room within a residential unit that is made available for rent for thirty consecutive days or less. (*See* ECF No. 14 at 3.)

[7]GLVSTRA members include Plaintiffs Jacqueline Flores – President and Director of GLVSTRA – and Louis and Estrelita Koorndyk, who were issued licenses by Clark County and who are subject to the County's regulatory requirements. (ECF No. 14 at 9-10.)

[8]Under AB 363, "[a] board of county commissioners shall not enact or enforce a complete prohibition on the rental of a residential unit or a room within a residential unit, and any such ordinance is "null and void." NRS § 244.353545.4; (*see also* ECF No. 14 at 5, 32).

Under Clark County's Ordinance, adopted on June 21, 2022 and codified in Chapters 7.100 and 7.110 of the County Code, property owners must obtain and annually renew both a business license and a short-term rental license to operate a short-term rental within the County.[9] (ECF No. 14 at 5, 34, 39.); *see also* Clark County Code §§ 7.100.030; 7.100.060; 7.100.130. Certain eligibility criteria limit which property owners may apply for a license. (ECF No. 14 at 36-37.) For example, homeowners in certain townships or "[w]ithin one thousand feet of any [other] short-term rental unit" are barred from obtaining a license. *See* Clark County Code § 7.100.080(c), (f)(2); (ECF No. 39 at 6-7). Likewise, under § 7.100.050, there is a one-percent cap on the number of short-term rental licenses that may be issued per year. (*See* ECF No. 14 at 5; ECF No. 39 at 7.)

Apart from the Ordinance's substantive limitations, Plaintiffs contend that the County's implementation of the licensing scheme "arbitrarily bars almost all property owners from applying for a license" through its "burdensome" application requirements, rendering the scheme the functional equivalent of a ban. (ECF No. 39 at 3, 13-14.) For example, Plaintiffs assert that, under its Ordinance, the County has only opened its license application portal ("the Portal") once (in fact, the County's Portal has been closed since August 2023) and has not accepted any new applications in over two years. (*Id.* at 3, 7; *see also* ECF No. 39-1 at 4, 76; ECF No. 48 at 20.) And, of the few applications the County has accepted, processing has been exceptionally slow, leaving most applicants "in limbo." (ECF No. 39 at 3.) Despite governing a jurisdiction with approximately one million residents and 300,000 homes, the County has issued only 174 licenses as of March 2025, while approximately 515 applications remain pending. (*Id.* at 3, 15; ECF No. 39-1 at 66.) Thus, Plaintiffs maintain that the County "has failed to stand up a meaningful

---

[9]Under § 7.100.030 of the Clark County Code, "[n]o person shall engage in the business of operating a short-term rental unit without first obtaining and thereafter maintaining a valid unexpired business license pursuant to this chapter."

4

licensing scheme" and that, in effect, its regulations operate as a de facto prohibition. (ECF No. 39 at 4, 15.)

Moreover, despite its failure to provide a workable path for homeowners to obtain licenses, Clark County has, following its announcement this past spring (ECF No. 39-1 at 70), enhanced enforcement against individuals who rent—or even advertise—their homes without a license. (ECF 39 at 4; ECF No. 39-1 at 4-5.) Enforcement measures include daily fines[10] ranging from $1,000 to $10,000 (ECF No. 39 at 8-9), as well as special assessments that may be recorded as liens on the affected properties.[11] (*Id.* at 20.) Under § 7.100.250 of the Clark County Code, all assessed fines, fees, and costs are subject to § 1.14.120 (addressing the collection of unpaid fines), which states that a host's failure to pay an administrative fine within fifteen days may result in the obligation becoming a "recordable lien" or special assessment lien placed on the property's tax roll. (*Id.*)

Plaintiffs assert in their Motion—and clarified at the Hearing (ECF No. 48 at 49-51)—that enforcement ramped up in February 2025 when the County amended its Code through Ordinance No. 5214, revising Title 1 to classify short-term rental violations as a "public nuisance," thereby expanding the County's ability to impose special assessment tax liens for such violations.[12] (*See* ECF No. 39 at 22 (citing Clark County Ordinance No.

---

[10]Under § 7.100.230(d)(1)(I) of the Clark County Code, "[w]here a person is alleged to be operating a residential unit or room within a residential unit for the purpose of transient lodging without possessing a valid unexpired short-term rental license, a fine of not less than one thousand dollars and not more than ten thousand dollars" may be assessed daily.

[11]For example, Jacqueline Flores's sworn declaration states that, on April 12, 2025, the County issued a fine of approximately $4,200 to GLVSTRA member David Murray for advertising a short-term rental without a license. (ECF No. 39-1 at 4.) Additionally, the County placed a special assessment lien on Murray's property, amounting to a total of $85,375. (*Id.* at 5.)

[12]Under § 7.100.220 ("Declaration of nuisance") of the Clark County Code, "[a]ny residential unit or room within a residential unit which is operated as a short-term rental unit without a valid unexpired short-term rental license issued pursuant to this chapter

5214; Clark County Code § 1.14.020(g)); *see also* ECF No. 47 at 46; ECF No. 39-2 at 4.) As a result, the County recorded two special assessment tax liens in April 2025, seven liens in May 2025, and thirty liens in July 2025.[13] (ECF No. 39 at 4; *see also* ECF No. 39-2 at 4.) In light of these escalating enforcement efforts, Plaintiffs describe how hosts must now confront a "Hobson's choice": to either "comply[] with an unlawful Ordinance by failing to list their properties," given the difficulty of obtaining a license, or to "face the County's draconian enforcement regime" and risk "financial ruin." (ECF No. 39 at 4, 20.)

Thus, Plaintiffs seek to preliminarily enjoin Clark County from enforcing Chapters 7.100—encompassing residential unit eligibility restrictions, the short-term rental license requirement, application procedures, and enforcement provisions—and 7.110 of the Clark County Code.[14] (ECF No. 39 at 23-24.) Plaintiffs allege that, absent preliminary injunctive relief, Clark County homeowners will suffer irreparable harm. (*Id.* at 19.)

## III.    DISCUSSION

A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)); *see also Alliance for the Wild Rockies v. Cottrell ("Alliance")*, 623 F.3d 1127, 1131 (9th Cir. 2011). To qualify for preliminary injunctive relief, a plaintiff must establish: (1) likelihood of success on the

---

constitutes a public nuisance." Under § 1.14.020(g) ("Citation form") of the Code, "[a] notice that collection of unpaid fines can be enforced by recording a lien and/or placing a special assessment lien on the tax roll pursuant to NRS 244.3605, against the property where a property related code violation is located and that unpaid assessments can result in the property being sold by the county assessor."

[13]Plaintiffs offered Jacqueline Flores' declaration to contend that April 2025 marked the first instance in which the County recorded a special assessment tax lien arising from short-term rental fines. (ECF No. 39-2 at 4.)

[14]In their Motion, Plaintiffs seek enjoinment of both Chapter 7.100—the licensing provision—and Chapter 7.110—the platform provision relating to "accommodations facilitators"—of the Clark County Code. (ECF No. 39 at 24.) However, the Court will only consider Plaintiffs' request for injunctive relief enjoining Chapter 7.100, as it has already addressed the request to enjoin Chapter 7.110 in its prior order. (ECF No. 36.)

merits; (2) likelihood of irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20.

The Court will first address the parties' arguments under the *Winter* framework as to Plaintiffs' likelihood of success on the merits and whether, absent injunctive relief, Plaintiffs will suffer irreparable harm before turning to the balancing of the equities and the public interest prongs, which will be addressed together. The Court finds that Plaintiffs satisfy all four *Winter* factors and will grant preliminary injunctive relief enjoining the license requirement and the enforcement provisions of the Ordinance.

**A. Likelihood of Success on the Merits**

Plaintiffs argue they are likely to prevail on the merits because the County's administration of the licensing system violates constitutional due process. (ECF No. 39 at 16-19.) In particular, Plaintiffs contend that the County's failure to establish a functional licensing scheme infringes on the property interests of homeowners. (*Id.* at 17.) Under the Fourteenth Amendment, a state or local government cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A procedural due process claim is analyzed through a two-step inquiry: (1) "whether there exists a liberty or property interest which has been interfered with by the State"; and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient."[15] *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (internal citation omitted).

///

---

[15] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), also sets forth a three-factor test for assessing whether the procedures provided before a deprivation of a property interest satisfy due process by balancing: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures." *See Barrows v. Becerra*, 24 F.4th 116, 140 (2d Cir. 2022) (citing 424 U.S. 319, 335 (1976) (considering due process challenge to state administrative procedures resulting in the termination of Social Security disability benefits)).

First, the parties dispute, as a threshold matter, whether a protected "property interest" is at stake—particularly with respect to attenuated ownership rights and the "right to lease." Defendants, on the one hand, argue Plaintiffs fail to state either a substantive or procedural due process claim because, in their view, there is no legal entitlement to operate a short-term rental and thus "no property interest [to] which due process could apply." (ECF No. 44 at 17-19.) Plaintiffs respond that Defendants have misconstrued the issue and emphasize that their *procedural* due process claim is a "modest" one. (ECF No. 45 at 9.) They clarify that homeowners possess a protected property interest in the "use and enjoyment" of their real property—here, in the ability to lease it—and analogize to a Ninth Circuit decision holding that a county's rezoning plan implicated procedural due process when it affected an owner's use and enjoyment of their property. (*Id.* at 9-10; ECF No. 39 at 17); *see Harris v. Cnty. of Riverside*, 904 F.2d 497, 503-04 (9th Cir. 1990) (holding that general published notice of County's rezoning plan did not satisfy procedural due process).

The Court agrees with Plaintiffs that "real property implicates a broad range of potential rights," *see Hamm v. Arrowcreek Homeowners' Ass'n*, 183 P.3d 895, 902 (Nev. 2008), *abrogated on other grounds by Saticoy Bay, LLC v. Peccole Ranch Cmty. Ass'n*, 495 P.3d 492 (Nev. 2021), including the "right to possess, use and enjoy" and the "legal right to control and dispose of" one's property, and finds that, here, the *opportunity* to obtain a short-term rental license constitutes a protected property interest and thus triggers procedural due process protections.

Next, the Court addresses the second prong of the inquiry: the procedural element. Generally, where a deprivation of a property interest is concerned, procedural safeguards must be conferred. *See, e.g.*, *Vance v. Barrett*, 345 F.3d 1083, 1089 (9th Cir. 2003) (addressing procedural protections in the property takings context). Here, Plaintiffs argue that the County's failure to stand up a functioning licensing regime constitutes constitutionally deficient procedure. (ECF No. 39 at 18.) As mentioned, the County has

failed to accept short-term rental license applications from hosts for over two years (*id.* at 3, 7; *see also* ECF No. 48 at 20) and has even conceded to the major administrative backlog and delays in its own license approval process (*see* ECF No. 44 at 15).

Other circuits have addressed similar issues and agree that a governmental entity's failure to establish a functional licensing process constitutes a violation of due process. *See, e.g.*, *Hornsby v. Allen*, 326 F.2d 605, 610 (5th Cir. 1964) (holding that Fourteenth Amendment due process was violated where no fair procedure was in place for applicants to demonstrate eligibility to obtain liquor license). Moreover, "'(d)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. at 334 (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Plaintiffs have demonstrated a likelihood of success on the merits of their due process claim. Under the present circumstances—where prospective short-term renters are effectively barred from applying for a license in the first place, and the County's untimely processing period leaves pending applicants exposed to unfair enforcement penalties in the interim—the County has deprived Plaintiffs of a protected property interest without providing any meaningful process. Thus, the County's licensing requirements, in combination with its escalation in enforcement actions, constitute a procedural due process violation. Accordingly, the Court finds Plaintiffs have satisfied the first *Winter* prong.

**B. Irreparable Harm**

Proceeding to the second *Winter* factor, a plaintiff must prove a likelihood of irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20. Irreparable harm is proven by demonstrating "immediate threatened injury." *See, e.g.*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988) (denying

preliminary injunctive relief where "liability [was] too remote and speculative to constitute an irreparable harm") (internal citation omitted). Here, Plaintiffs assert that the likelihood of irreparable harm stems from both the deprivation of constitutional rights and from the financial injury resulting from the County's aggressive escalating enforcement actions. (ECF No. 39 at 19-20.) The Court agrees with Plaintiffs.

To understand the alleged harms, the Court must first address what it identifies as the three categories of affected plaintiffs. The Court finds that the following categories of named and unnamed Plaintiff homeowners have Article III standing and are subject to irreparable harm: (1) *No Opportunity to Apply*: those who have no opportunity to apply for a short-term rental license because the Portal has been closed since August 2023 and remains closed; (2) *Applied but Awaiting Action*: those who have applied but whose applications remain unprocessed; and (3) *Operating Without a License*: those who lack a license but continue operating at risk of County fines and/or special assessments. (*See, e.g.*, ECF No. 39-1 at 4 (describing GLVSTRA member injuries); *see also* ECF No. 39 at 20-21); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (To establish Article III standing, a plaintiff "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.").

First, Plaintiffs argue that the "loss of constitutional rights" (referencing the alleged procedural due process violation) constitutes irreparable injury. (ECF No. 39 at 8, 19.) This Circuit has found that when an alleged deprivation of a constitutional right is involved, irreparable harm generally follows. *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (internal citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (holding that a finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional"). That is, "where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation" and succeeds in demonstrating a likelihood of success on the merits, that

showing "will almost always demonstrate" irreparable harm as well. *See Baird*, 81 F.4th at 1042; *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As discussed above, the Court finds that Plaintiffs have succeeded in proving the first *Winter* factor: a likelihood of success on the merits of their procedural due process claim. Accordingly, because Plaintiffs are likely deprived of their procedural due process rights under the operation of the current licensing scheme, there is a corresponding likelihood of irreparable harm absent the issuance of a preliminary injunction.

Next, Plaintiffs contend that, absent a preliminary injunction, homeowners will continue to incur irreparable injuries under the County's escalating enforcement actions. (ECF No. 39 at 19-21.) As alluded to above, homeowners are caught between a rock and a hard place. Hosts face a "Hobson's choice," *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1057 (9th Cir. 2009), in being forced to choose between complying with the Ordinance and violating it. (ECF No. 39 at 19-20.) Those who lack a license and/or whose applications remain pending but who continue to operate their short-term rentals in violation of the Ordinance run the risk of County fines or the recording of special assessment tax liens on their properties. (*Id.* at 21.) Such enforcement measures taken in combination with the County's impracticable licensing system irreparably "damag[e] [] real property and title interest." *See, e.g.*, *OneMain Fin. Servs., Inc. v. Boyer*, No. 6:23-cv-00022, 2024 WL 2703157, at *2 (N.D. Tex. May 6, 2024) (finding that "unlawful and unauthorized filings . . . to claim a lien on and title to the Property damaging Plaintiff's real property and title interest" constituted irreparable harm). And, the "loss of real property rights" generally constitutes a unique form of irreparable harm for which monetary damages are inadequate. *See Saticoy Bay LLC Series 452 Crocus Hill v. Quality Loan Serv. Corp.*, 826 F. App'x 610, 614 (9th Cir. 2020) (citing *Dixon v. Thatcher*, 103 Nev. 414 (Nev. 1987)).

Moreover, although the County contends that Plaintiffs' "delay" in seeking relief should weigh against a finding of irreparable harm and bar a preliminary injunction (ECF No. 44 at 23-24), the Court agrees with Plaintiffs that the County's "implementation failings" only came to light in recent months following the ramp-up of enforcement and recognizes that they now file this Motion given the "ongoing [and] worsening injuries." (*See* ECF No. 45 at 12-13; ECF No. 39 at 22 (citing *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (holding that "delay is but a single factor to consider in evaluating irreparable injury")).) The Court thus concludes that actively imposing additional penalties on "offending" homeowners—who have fallen victim to the County's administrative backlog and delays[16]—constitutes real harm that is actual and imminent, not merely speculative. *See, e.g.*, *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d at 675.

Based on the reasons discussed above, the Court finds Plaintiffs have shown that irreparable harm has resulted and will likely continue to result under the present scheme unless the Court preliminarily enjoins not only the license requirement but also the County's enforcement provisions governing fines and the recording of special assessment tax liens.

### C. Balance of the Equities & the Public Interest

The Court considers the third and fourth factors together.[17] Because the Court concludes Plaintiffs are likely to both succeed on the merits and suffer irreparable harm, it necessarily finds that the balance of the equities and the public interest also weigh in favor of granting the injunction. "To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against

---

[16]In its opposition, the County acknowledged a backlog and delays in its own license approval process. (ECF No. 44 at 15 ("[T]he requirements of AB 363 and safety concerns each have forced the licensing process to be very slow.").)

[17]"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020); *see also Baird v. Bonta*, 81 F.4th 1036, 1039-40 (9th Cir. 2023).

the possibility of the harm caused by not issuing it." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). The Court must then weigh "the hardships of each party against one another." *Id.* As to public interest, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

The County fails to directly address the above-mentioned harms, including the unfairness of the enhanced enforcement of the license requirement without, as Plaintiffs point out, "investing in a meaningful process" to adjudicate applications.[18] (*See* ECF No. 44 at 23-25.) Nor does the County acknowledge the benefit of an enforcement pause (*see id.* at 15), which, as Plaintiffs signal, would allow the County time to address its backlogged process and implement reasonably functional licensing procedures. (ECF No. 45 at 14.) Moreover, issuance of a preliminary injunction would serve the public interest. The Court agrees with Plaintiffs that there is a compelling public interest in both enjoining the license requirement and suspending its enforcement until homeowners have a practical means to apply for a license. Accordingly, the Court finds that the balancing of the equities and public interest factors weigh in favor of granting Plaintiffs' Motion with respect to the license requirement and enforcement provisions.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' motion for a preliminary injunction (ECF No. 39) is granted in part. Pending a final decision on the merits, Clark County is enjoined

---

[18]The purpose of a preliminary injunction is to *preserve* the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

from enforcing § 7.100.030, § 7.100.230(d)(1)(I), § 7.100.220, § 7.100.250, and § 1.14.020(g) of the Clark County Code.

DATED THIS 17th Day of December 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE